**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

JACQUELINE JACOBSON,

    Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC., a Delaware corporation,

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Jacqueline Jacobson, by and through her attorneys, Sweeney & Bechtold, LLC, hereby submits her Complaint against the above-named Defendant as follows:

## INTRODUCTION

1. This is an employment discrimination suit brought by a former employee of Marriott International, Inc. ("Marriott") who was discriminated and retaliated against and constructively discharged from her employment in violation of federal law. Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA").

## PARTIES

2. Plaintiff Jacqueline Jacobson is a resident of the State of Colorado.

3. Defendant Marriott is a Delaware corporation authorized to do business in Colorado.

4. Marriott's principal office is located at 10400 Fernwood Road, Suite 924.13 in Bethesda, Maryland 20817.

5. Marriott's registered agent in Colorado is located at 3773 Cherry Creek North Drive #575 in Denver, Colorado 80209.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, in that this action arises under federal law, specifically the Title VII and the ADEA.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

8. At all relevant times, Defendant Marriott was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII and 29 U.S.C. § 630(b) of the ADEA.

9. The procedural prerequisites for the filing of this suit have been met.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 25, 2014 and has received a Notice of Right to Sue letter.

## SPECIFIC ALLEGATIONS

10. Plaintiff began her career with Marriott in May 1987 as a Project Manager.

11. Plaintiff left the company in the latter part of 1999 and returned in September 2006.

12. From September 2006 through her constructive discharge on February 15, 2014, her title was Senior Manager, Marketing & eCommerce – Western Region.

13. Throughout her employment, Plaintiff performed her duties satisfactorily or better.

14. During Plaintiff's time as the Senior Manager, Marketing & eCommerce – Western Region, she received Global and Regional Leadership Honors for marketing and ecommerce campaigns that drove significant revenues to properties, demonstrated commendable relations with hotel owners, and exemplified strong integrated media.

15. Despite Plaintiff's record of satisfactory or better employment, she applied for but was passed over for the position of Director of Marketing & eCommerce three times in seven years.

16. On all three occasions, Marriott hired younger individuals with less experience than Plaintiff for the Director of Marketing & eCommerce position.

17. In addition, two male Senior Managers of eCommerce were promoted to Director level positions while Plaintiff was not.

18. In 2012, Plaintiff was asked to serve as the interim Director of Marketing & eCommerce.

19. When Plaintiff applied for the job, Marriott did not select her.

20. Instead, the company hired Danielle Granillo to be the Director of Marketing & eCommerce Western Region in 2012.

21. When Jon Moore, the Vice President, Marketing & eCommerce – Americas, informed Plaintiff that Ms. Granillo had been selected for the Director position, he asked Plaintiff if she would object to him using an on-boarding plan for Ms. Granillo's training that Plaintiff had prepared and presented at her interviews for the Director position.

22. At that time, there were four new hires in the Marketing department, all of whom were under the age of 40.

23. Of the Managers hired in 2013, a younger female was promoted to Senior Manager within a year of being hired by Marriott.

24. This hire was granted the following opportunities: participation in task forces with corporate (social media), leading a test model for Marriott's "work spring" concept, and co-authoring a presentation for a regional Wedding Cluster campaign.

25. This individual continued to receive special projects despite the fact that the Wedding Cluster campaign promotion that she supervised was launched more than four months late.

26. Marriott denied Plaintiff's requests to make similar contributions.

27. Ms. Granillo visited California markets once per month on average; however, in two years, she visited Plaintiff's Denver market only twice.

28. In 2013, Mr. Moore visited several California and Texas markets but failed to visit any of Plaintiff's markets, i.e., Utah, Colorado, and Houston, Texas.

29. Ms. Granillo ignored suggestions that Plaintiff made regarding the performance of a Marketing Coordinator even though Plaintiff worked directly with the Coordinator and Ms. Granillo did not.

30. Plaintiff complained about this incident to Carol Ludwig, Director of Human Resources – Shared Services.

31. Ms. Granillo excluded Plaintiff from discussions with another Senior Manager about the promotion of one of Plaintiff's direct reports.

32. Ms. Granillo then advised Plaintiff's team of the Coordinator's promotion and start date, giving Plaintiff only three days' notice to work with the Coordinator to close out projects and create a transition plan.

33. At the conclusion of the hiring process for a new Marketing Coordinator, who would report to Plaintiff, Plaintiff told Ms. Granillo that she had reservations about the finalist's experience level; Ms. Granillo dismissed Plaintiff's concerns.

34. From October 2012 through February 2013, while Ms. Granillo was out on maternity leave, Plaintiff voluntarily led a team of four Marketing Managers and two Marketing Coordinators.

35. This included managing daily progress for the Marketing Managers' development of 2014 budgets, marketing strategy presentations, marketing and ecommerce media recommendations, and flow chart productions across more than 60 hotels in the western United States.

36. The team delivered materials on time and without incident over this time period.

37. No complaints were voiced to Plaintiff during this time.

38. Despite Plaintiff's successful leadership performance during Ms. Granillo's absence, Plaintiff was denied opportunities for advancement within the Marketing department.

39. Mr. Moore invited Plaintiff to his team's leadership meeting in Chicago in January 2013.

40. Mr. Moore stated that, while it was ok for Plaintiff to attend, he cautioned that Plaintiff should not "actively contribute" to the conversations.

41. Nonetheless, Plaintiff attended and volunteered to take notes for the team.

42. Upon her return from maternity leave in early February 2013, Ms. Granillo thanked Plaintiff for "stepping up" in her absence and stated that senior leadership was appreciative of Plaintiff having taken the initiative.

43. Mr. Moore sent Plaintiff a handwritten thank you note for her work and proactive willingness to serve as the interim team lead.

44. In mid-February 2013, Ms. Granillo informed Plaintiff that three employees allegedly complained that Plaintiff was not "close to her work."

45. When Plaintiff questioned this in light of her previously commendable performance, Ms. Granillo responded that "perception is reality" and failed to provide any additional context.

46. Ms. Granillo then directed Plaintiff to draft a plan to address these purported issues and stated that Plaintiff could not consult with anyone to substantiate these complaints.

47. During a Marketing & eCommerce team meeting on July 31, 2013, Mr. Moore:

   a. told Plaintiff that her performance was "not valued" and that she was a "sub-performer" as a Senior Manager;

   b. stated that Plaintiff's Senior Manager stakeholder ratings were the lowest in the system, when that had been the case in 2012, not 2013;

   c. accused Plaintiff of inappropriately delegating strategic marketing projects to Marketing Coordinators;

   d. said that Plaintiff wasn't "putting [her]self into [her] job," implying that she was just drawing a paycheck, and that she was "losing luster";

   e. stated that Plaintiff had won no awards, offered no new ideas, and that she was not on the "cutting edge," even though she had just made a presentation to senior leadership in Texas in which she introduced new marketing merchandising campaigns;

   f. stated that Plaintiff had no chance of becoming a Director of Marketing & eCommerce in this department; and

   g. accused Plaintiff of being defensive when she requested specific information to support his statements.

48. The July 31, 2013 meeting was the first time that Plaintiff had ever heard these statements made about her performance.

49.     Shortly thereafter, Plaintiff explained to Ms. Granillo that she was very startled by Mr. Moore's tone and the content of his comments and asked if Ms. Granillo was dissatisfied with Plaintiff's performance.

50.     Ms. Granillo responded that she was not aware of any concerns other than Mr. Moore having informed her of his desire to speak with Plaintiff.

51.     In August 2013, Ms. Granillo conducted a verbal mid-year review of Plaintiff by phone.

52.     During the conversation, Ms. Granillo provided strong positive feedback and suggestions on areas where Plaintiff could create more opportunities, including presenting social media marketing innovations and increasing hotel visits.

53.     Ms. Granillo also shared a note from a regional sales leader that commended Plaintiff on her performance.

54.     The feedback that Plaintiff received in her mid-year review did not reflect any of the sentiments that Mr. Moore had expressed in July.

55.     Without any prior explanation, in November 2013, Ms. Granillo scheduled a conference call with Plaintiff entitled "Your Performance."

56.     When the conference call began, Ms. Granillo e-mailed a Disciplinary Action Form labeled "serious misconduct" to Plaintiff.

57.     Ms. Granillo explained that she and Mr. Moore had obtained this form from Carol Ludwig, Director of Human Resources, and that Ms. Ludwig had "blessed it."

58.     The Disciplinary Action Form listed more than 15 alleged performance deficiencies that were inaccurate, unsubstantiated, and/or wholly subjective.

59. During the conference call, Ms. Granillo told Plaintiff that there was no opportunity to refute any of the allegations and that Plaintiff was "prohibited" from speaking with anyone about these allegations or discipline.

60. Shortly thereafter, Plaintiff contacted Ms. Ludwig and explained that the document included numerous misstatements and errors.

61. During that discussion, Ms. Ludwig responded that she had neither read nor approved the Disciplinary Action Form.

62. Plaintiff, after cancelling a previously scheduled vacation, drafted and submitted to Ms. Granillo, Mr. Moore, and Ms. Ludwig a comprehensive response to the written warning in which she addressed each accusation and provided substantive examples.

63. In a subsequent conference call with Ms. Granillo, Mr. Moore, and Ms. Ludwig, Plaintiff requested that they review her response so that she could receive additional feedback on her performance.

64. In response, Mr. Moore accused Plaintiff of not taking the warning seriously.

65. None of these individuals formally addressed Plaintiff's response during the call.

66. During a phone discussion with Ms. Ludwig in November 2013, Plaintiff mentioned that she had not received a written mid-year review.

67. In response, Ms. Ludwig e-mailed Plaintiff a document that purported to be Plaintiff's mid-year review, which Plaintiff had not seen before and the content of which was false and did not mirror the verbal mid-year review that Ms. Granillo provided to Plaintiff in August 2013.

68. The final comment noted by Ms. Granillo in the mid-year review indicated that Plaintiff's performance was at risk of approaching an "average to unsatisfactory" rating.

69.     Ms. Ludwig commented that she now understood why Plaintiff had been questioning the statements in the written warning.

70.     Ms. Ludwig further noted that, pursuant to company policy, Plaintiff should have received the mid-year review and had an opportunity to review it and that, because this had not occurred, Ms. Ludwig needed to "escalate" this incident to Marriott's International Corporate offices.

71.     On November 20, 2013, Plaintiff verbally filed an internal complaint of age and gender discrimination with Marriott.

72.     The Marriott EEO Associate Fair Treatment Policy indicates that employees have a responsibility to report perceived discrimination and ethics violations and that they will be protected from retaliation for doing so.

73.     On December 1, 2013, per Ms. Ludwig's request, Plaintiff sent Ms. Ludwig a written document that identified specific incidents of discrimination and suggested that Ms. Ludwig contact a witness who would support Plaintiff's claims.

74.     Ms. Ludwig failed to interview Plaintiff or the witness who Plaintiff named.

75.     After Plaintiff filed the complaint in November, Ms. Granillo became increasingly hostile towards Plaintiff, so much so that Plaintiff asked that Ms. Ludwig participate in telephone conversations between Plaintiff and Ms. Granillo to ensure that Ms. Granillo would behave in an appropriate manner.

76.     After Plaintiff filed the internal complaint, she notified Ms. Ludwig on several occasions that she felt she was being retaliated against, including by Ms. Granillo.

77. On December 16, 2013, Ms. Granillo presented Plaintiff with an addendum to the November 7 disciplinary action that listed more than 30 action items that were required to be completed by February 28, 2014.

78. Completion of all of the action items was virtually impossible.

79. Regardless, Plaintiff dedicated herself to accomplishing the action items, cancelling previously scheduled vacations and working weeknights and weekends.

80. At Plaintiff's own expense, she completed several online courses to earn four marketing and design certificates and traveled to Los Angeles for a seminar on social media.

81. During this time, Plaintiff won a regional award recognizing her leadership contributions in planning, launching, measuring, and providing strategic counsel (with a full presentation to senior stakeholders) that resulted in a successful digital promotion supporting more than 20 hotels in Texas.

82. During weekly performance conference calls, Ms. Granillo angrily scrutinized Plaintiff's actions and attacked each of her accomplishments.

83. Ms. Granillo became personally demeaning several times and, in one instance, Plaintiff abruptly stopped a call because of Ms. Granillo's tone.

84. After it became clear that Plaintiff's relationship with Ms. Granillo was irreparable, Plaintiff submitted a formal request to be transferred to a new supervisor and/or position on around January 28, 2014.

85. Marriott denied Plaintiff's request.

86. After nearly 20 years of employment with Marriott, Plaintiff was constructively discharged on February 15, 2014.

87. Plaintiff filed Charge of Discrimination number 541-2014-02042 on August 25, 2014 with the EEOC in which she alleged that she was discriminated and retaliated against based on her sex and/or age in violation of Title VII and the ADEA.

88. On February 27, 2015, the EEOC issued Plaintiff a Notice of Right to Sue in connection with Charge of Discrimination number 541-2014-02042.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

89. The foregoing allegations are realleged and incorporated herein by reference.

90. Marriott subjected Plaintiff to less favorable terms and conditions of her employment based on sex. This treatment included, but is not limited to: failing to include Plaintiff in personnel decisions regarding her subordinates; dismissing her efforts and opinions in front of her peers; disciplining her based on unsubstantiated and/or subjective criteria; requiring that she conform to unrealistic performance standards; denying her a transfer or placement elsewhere in the company; and constructively discharging her.

91. Marriott's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

92. Marriott's conduct discriminated against Plaintiff on the basis of her sex in violation of Title VII.

93. As a direct and proximate result of Marriott's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended)

94. The foregoing allegations are realleged and incorporated herein by reference.

95. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under Title VII.

96. As a result of Plaintiff's protected opposition to discrimination, Marriott retaliated against her by subjecting her to less favorable terms and conditions of employment, as described in this Complaint, including, but not limited to: subjecting her to heightened scrutiny; refusing to adequately investigate her complaints; requiring that she conform to unrealistic performance standards; instituting an action plan that was designed to ensure her failure; denying her a transfer or placement elsewhere in the company; and constructively discharging her.

97. Marriott's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

98. Marriott's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

99. As a direct and proximate result of Marriott's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF
(Age Discrimination in violation of the Age Discrimination in Employment Act)

100. The foregoing allegations are realleged and incorporated herein by reference.

101. By virtue of her age, Plaintiff belongs to a protected group under the ADEA.

102. Marriott subjected Plaintiff to less favorable terms and conditions of her employment based on age. This treatment included, but is not limited to: failing to include Plaintiff in personnel decisions regarding her subordinates; dismissing her efforts and opinions in front of her peers; disciplining her based on unsubstantiated and/or subjective criteria; requiring that she conform to unrealistic performance standards; denying her a transfer or placement elsewhere in the company; and constructively discharging her.

103. The discriminatory actions of Marriott were done knowingly and willfully, justifying an award of liquidated damages.

104. As a direct and proximate result of Marriott's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FOURTH CLAIM FOR RELIEF**
(Retaliation in violation of the Age Discrimination in Employment Act)

105. The foregoing allegations are realleged and incorporated herein by reference.

106. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under the ADEA.

107. As a result of Plaintiff's protected opposition to discrimination, Marriott retaliated against her by subjecting her to less favorable terms and conditions of employment, as described in this Complaint, including, but not limited to: subjecting her to heightened scrutiny; refusing to adequately investigate her complaints; requiring that she conform to unrealistic performance standards; instituting an action plan that was designed to ensure her failure; denying her a transfer or placement elsewhere in the company; and constructively discharging her.

108.   Marriott's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

109.   Marriott's conduct violated 29 U.S.C. § 623(d) of the ADEA.

110.   As a direct and proximate result of Marriott's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff Jacqueline Jacobson respectfully requests that this Court enter judgment in her favor and against Defendant Marriott and order the following relief as allowed by law:

A.   Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.   Back pay and benefits;

C.   Reinstatement or front pay and benefits;

D.   Injunctive and/or declaratory relief;

E.   Punitive damages and/or liquidated damages as allowed;

F.   Attorney fees and costs of the action, including expert witness fees, as appropriate;

G.   Pre-judgment and post-judgment interest at the highest lawful rate; and

H.   Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted May 27, 2015.

                                          By:    s/Charlotte Sweeney

SWEENEY & BECHTOLD, LLC
650 S. Cherry St., Ste. 610
Denver, CO 80246
Telephone: (303) 865-3773
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
5904 Meadowbrook Drive
Morrison, Colorado 80465

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

                                          By:    s/Charlotte Sweeney

SWEENEY & BECHTOLD, LLC
650 S. Cherry St., Ste. 610
Denver, CO 80246
Telephone: (303) 865-3773
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF